UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:21-cv-00068-BJB
*(Electronically Filed)*

DANIEL MCNALLY,
Individually and on behalf of
all other similarly situated

                                                                    PLAINTIFF

vs.    **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
       APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
       AND FOR CERTIFICATION OF A SETTLEMENT CLASS**

THE KINGDOM TRUST COMPANY                              DEFENDANT

***** ***** *****

## TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ................................................................................. 1

   A.  Background Facts.......................................................................................... 2

   B.  Procedural History ...................................................................................... 4

   C.  Settlement Discussions ................................................................................ 5

   D.  The Proposed Settlement ............................................................................ 6

   E.  Proposed Schedule of Events....................................................................... 7

II.  ARGUMENT ..................................................................................................... 9

   A.  THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ....... 9

      1.  Public Policy Strongly Favors Settlements of Complex Actions ................. 9

      2.  The Preliminary Approval Process ............................................................ 9

      3.  The Standard for Preliminary Approval ................................................... 10

      4.  The Proposed Settlement Satisfies Each of the Rule 23(e) Factors............... 11

         i.   The Settlement Is the Result of Hard-Fought Litigation and Thorough Arm's-Length Negotiations with the Assistance of a Mediator. ................................................ 11

         ii.  The Relief Provided by the Settlement is Adequate .................................. 14

            a.   The Settlement Amount is Adequate in Light of the Limited Funds................... 14

            b.   The Costs, Risks and Delay of Trial and Appeal and the Risk of Maintaining Class Action Status ...................................................................................... 15

            c.   The Proposed Method of Distributing Relief to the Class is Effective................ 18

            d.   The Terms of Any Proposed Award of Fees and Expenses Including the Timing of Payment .................................................................................................... 18

            e.   The Proposal Treats Class Members Equitably Relative to Each Other .............. 20

            f.   There are No Agreements Required to be Identified Under Rule 23(e)(3) .......... 20

B.    THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS AND APPOINT MCNALLY AND BRAGER AS CLASS REPRESENTATIVES .............. 21

    1.    Standards Applicable to Class Certification ................................................ 21

    2.    The Settlement Class Meets the Requirements of Rule 23(a) ..................... 21

        i.    Rule 23(a) Numerosity ........................................................................ 21

        ii.    Rule 23(a)(2) Questions of Law or Fact Are Common ............................ 22

        iii.    Rule 23(a)(3) Plaintiff's Claims Are Typical ...................................... 22

        iv.    Rule 23(a)(4) The Class Representatives Are Adequate ..................... 23

    3.    The Settlement Class Meets the Requirements of Rule 23(b)(3) ................ 24

        i.    Common Questions of Law or Fact Predominate .................................... 24

        ii.    A Class Action is a Superior Method of Adjudication ............................. 25

C.    THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS 26

D.    APPOINTMENT OF CLASS COUNSEL ........................................................ 28

E.    APPROVAL OF PLAINTIFFS SELECTION OF CLAIMS ADMINISTRATOR ........ 29

III.    CONCLUSION .............................................................................................. 29

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................ 21, 24

*Back v. Ray Jones Trucking, Inc*., No. 4:22-cv-00005-GNS-HBB, 2025 U.S. Dist. LEXIS 162558 ........................................................................................................... 18, 19

*Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) ................................. 22, 23

*Bowen v. Paxton Media Grp, LLC*, No. 5:21-CV-00143-GNS, 2024 U.S. Dist. LEXIS 61269 (W.D. Ky. Apr. 2, 2024) .................................................................................. 12

*Bowers v. Windstream Kentucky E., LLC*, 278 F.R.D. 170, 174 (W.D. Ky. 2011) ...................... 23

*Branson v. All. Coal, LLC*, No. 4:19-cv-155-RGJ-HBB, 2025 U.S. Dist. LEXIS 131090 (W.D. Ky. July 10, 2025) .......................................................................................... 9

*Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 899 (6th Cir. 2019) ................................ 9, 15, 27

*Elliott v. LVNV Funding, LLC*, No. 3:16-cv-00675-RGJ, 2019 U.S. Dist. LEXIS 143692 (W.D. Ky. Aug. 23, 2019) ............................................................... 9, 21, 22, 24, 25, 27, 28

Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendments .................................. 11

*Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008) ....................................................... 28

*Green v. Platinum Rests. Mid-Am, LLC*, No. 3:14-CV-439, 2022 U.S. Dist. LEXIS 76455 (W.D. Ky. Apr. 27, 2022) ........................................................................................ 19

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532 (E.D. Mich. 2003) ......................... 19

*In re Correctcare Data Breach Litig.*, No. 5:22-319-DCR, 2024 U.S. Dist. LEXIS 166754 (E.D. Ky. Sept. 17, 2024) ........................................................................................ 28

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 U.S. Dist. LEXIS 119870, 2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) ........................ 19

*In re Flint Water Cases*, 499 F. Supp. 3d 399 (E.D. Mich. 2021) ...................................... 21

*In re Packaged Ice Antitrust Litig.*, 322 F.R.D. 276, 285-86 (E.D. Mich. 2017) ..................... 23

*Lott v. Louisville Metro Gov't*, No. 3:19-CV-271-RGJ, 2021 U.S. Dist. LEXIS 50153 (W.D. Ky. March 17, 2021) .......................................................................................... 22

iv

*Manners v. Am. Gen. Life Ins. Co.*, No. 3-98-0266, 1999 U.S. Dist. LEXIS 22880 (M.D. Tenn. Aug. 10, 1999) ................................................................................................ 25

*McClurg v. Dall. Jones Enters*, No. 4:20-cv-201-RGJ-HBB, 2025 U.S. Dist. LEXIS 131093 (W.D. Ky. July 10, 2025) .................................................................................... 12

*Mitcham v. Intrepid U.S.A., Inc.*, No. 3:17-cv-703-CHB, 2019 U.S. Dist. LEXIS 88870 (W.D. Ky. May 28, 2019) ...................................................................................... 22

*New Eng. Health Care Emples. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006) ............................................................................................ 17, 19

*Newton v. Am. Debt Servs., Inc.*, 2016 WL 7743686 (N.D. Cal. Jan. 15, 2016) ........................ 17

*Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield*, 654 F.3d 618 (6th Cir. 2011).......... 25

*Savidge v. Pharm-Save, Inc.*, 727 F. Supp. 3d 661, 698 (W.D. Ky. 2024)................................. 22

*Sellards v. Midland Credit Mgt., Inc.*, No. 1:20-CV-02676, 2023 U.S. Dist. LEXIS 92700 (N.D. Ohio May 2, 2023) ........................................................................................ 15

*Sprague v. GMC*, 133 F.3d 388, 398 (6th Cir. 1998) ................................................................ 23

*Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F.Supp. 2d 521 (E.D. Ky. 2010) .................... 13

*Thompson v. Seagle Pizza*, No. 3:20-cv-16-DJH-RSE, 2021 U.S. Dist. LEXIS 254142 (W.D. Ky. June 1, 2021) ............................................................... 10, 11, 13, 16, 18, 20, 21

*Thompson*, 2021 U.S. Dist. LEXIS 254142 at *5-6.................................................................... 11

*UAW v. GMC*, No. 05-CV-73991-DT, 2006 U.S. Dist. LEXIS 14890, (E.D. Mich. Mar. 31, 2006) .................................................................................................................. 13

*United States v. Hansen*, 791 F.3d 863, 868 (8th Cir. 2015) ..................................................... 17

*Vassalle v. Midland Funding LLC*, 708 F.3d 747, 759 (6th Cir. 2013)........................................ 26

*Waid v. Snyder (In re Flint Water Cases)*, 63 F.4th 486, 500 (6th Cir. 2023)................................ 8

*Wayside Church v. Van Buren Cnty.*, 103 F.4th 1215, 1222 (6th Cir. 2024) .............................. 10

*Williams v. Vukovich,* 720 F.2d 909, 922 (6th Cir. 1983)......................................................... 16

**Rules**

Fed. R. Civ. P. 23(a) ................................................................................................................. 1

Fed. R. Civ. P. 23(a)(1).............................................................................................................. 21

v

Fed. R. Civ. P. 23(a)(2) .................................................................................................. 22

Fed. R. Civ. P. 23(a)(3) .................................................................................................. 22

Fed. R. Civ. P. 23(a)(4) .................................................................................................. 23

Fed. R. Civ. P. 23(b) ...................................................................................................... 21

Fed. R. Civ. P. 23(b)(3)(A) ............................................................................................ 25

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................ 26

Fed. R. Civ. P. 23(c)(3) .................................................................................................. 27

Fed. R. Civ. P. 23(e)(1) .................................................................................................... 9

Fed. R. Civ. P. 23(e)(2) ............................................................................................ 10, 11

Fed. R. Civ. P. 23(e)(2)(A) ............................................................................................ 11

Fed. R. Civ. P. 23(e)(2)(C) ....................................................................................... 14, 15

Fed. R. Civ. P. 23(e)(2)(C)(ii) ....................................................................................... 18

Fed. R. Civ. P. 23(e)(3) .................................................................................................... 6

Fed. R. Civ. P. 23(f) ....................................................................................................... 16

Fed. R. Civ. P. 23(g) ...................................................................................................... 28

## I.    PRELIMINARY STATEMENT

Plaintiff Daniel McNally and proposed additional plaintiff Daniel Brager ("Proposed Additional Plaintiff") (collectively "Plaintiffs" or "proposed Class Representatives"), through proposed Class Counsel Rosca Scarlato, LLC and McCarthy Lebit Crystal & Liffman Co., LPA ("Counsel"), submit this unopposed Motion for Preliminary Approval of Proposed Class Action Settlement and for Certification of a Settlement Class in this action (the "Action" or the "Class Action"). *See* Fed. R. Civ. P. 23(a), (b)(3), and (e). The proposed settlement is in the amount of $1 million in cash, pursuant to the terms set forth in the Settlement Agreement[1] and will resolve this Action in its entirety (the "Settlement"). Plaintiffs, on behalf of themselves and all others similarly situated, entered into the Settlement Agreement with defendant, The Kingdom Trust Company, n/k/a KTC Holding Company, ("Kingdom Trust" or "Defendant") in the Action.

Plaintiffs respectfully submit that the Settlement is a good result for the Settlement Class and should be preliminarily approved by the Court. The decision to settle was informed by a comprehensive investigation, intensive motion practice, extensive discovery, and arm's length negotiations overseen by a respected and experienced mediator. For the reasons stated herein, Plaintiffs respectfully request that the Court grant this Motion.

---

[1] Defined terms used herein shall have the same meaning as those terms are used in the Settlement Agreement dated November 7, 2025, attached as Exhibit 1 to the Declaration of Hugh D. Berkson and Alan L. Rosca in Support of Plaintiffs' Motion for Preliminary Approval of Settlement filed herewith.

A.    **BACKGROUND FACTS**

This case arises out of an alleged Ponzi scheme (the "William Jordan Fund Scheme") orchestrated by William Jordan, who was at the time an SEC-registered investment adviser. *See* Declaration of Hugh D. Berkson and Alan L. Rosca in Support of Plaintiffs' Motion for Preliminary Approval of Settlement ("Declaration") filed herewith at ¶ 5.[2] Between 2011 and 2016, Jordan was reported to have raised more than $71 million from approximately 201 advisory clients. ¶ 72. He created at least sixteen individual investment funds – most of which purported to invest in real estate (the "William Jordan Funds" or "WJA Funds"). ¶ 12. Unfortunately, he lied to investors about how their monies would be invested. *See, e.g.,* ¶¶ 6, 29. On May 15, 2018, the United States Securities and Exchange Commission ("SEC") filed a civil enforcement action against Jordan (the "SEC Action"). ¶ 10. The SEC alleged that Jordan inflated the values of those Funds and used those inflated figures to overpay himself management fees and bonuses. ¶ 12.  The case against him was *Securities and Exchange Commission v. William J. Jordan*, in the Central District of California, Dkt. No. 8:18-cv-00852. ¶ 11.

Jordan represented to investors that he utilized third-party custodians for the William Jordan Funds to ensure there would be no "Bernie Madoff" situations. ¶ 6. Relevant herein, Jordan moved his Funds from Millenium Trust to Kingdom Trust in late 2015. ¶ 33. Each Fund entered into a separate "Custodial Services Agreement" ("CSA") Kingdom Trust drafted. ¶ 33.

Kingdom Trust thereafter facilitated every transaction a William Jordan Fund representative requested. ¶ 34. The Complaint alleges that in so doing, Kingdom Trust facilitated the Ponzi scheme whereby earlier investors' monies were used to pay newer investors. ¶ 27.

---

[2] References to the Declaration will be made herein as ¶ ___.

Notably, each CSA allowed Kingdom Trust to decline to make any transactions a William Jordan Fund requested if Kingdom Trust believed it could result in incurring liability. ¶ 34. Kingdom Trust's witnesses testified, however, that they accepted and processed any transaction requested by a WJA Fund representative authorized to issue such instructions and never declined such an instruction so long as there were sufficient funds in the subject account to effectuate the requested transaction. *Id*. Thus, Jordan was able to move money freely to support his scheme, without interference from the entity he told clients offered them an additional level of security.

As with virtually all Ponzi schemes, there reached a point where there were insufficient inflows of funds from whatever business operations actually existed or from new investors, and the scheme collapsed under its own weight. In May 2017, the William Jordan Funds sought bankruptcy protection and were placed under the control of an independent chief restructuring officer. ¶ 13.

Thereafter, in May 2018, the SEC alleged that Jordan violated the antifraud provisions of the federal securities laws, and ultimately reached a settlement with Jordan. Pursuant to the settlement, the court overseeing the SEC Action issued a judgement permanently barring Jordan from violating the federal securities laws and ordering disgorgement, a civil penalty, prejudgment interest, and a permanent injunction. However, the disgorgement and civil penalties were never articulated. ¶¶ 10-17.

Plaintiff Daniel McNally was an investor in certain of the William Jordan Funds. ¶ 30. He was sold promissory notes, which were in truth securities that were not registered as they should have been. Proposed Additional Plaintiff Daniel Brager, who was in the process of being added as an additional Plaintiff when the parties reached agreement concerning settlement, was also an

3

investor in improperly unregistered promissory notes issued by certain of the William Jordan Funds. ¶ 31.

### B.    PROCEDURAL HISTORY

The procedural history of this case is extensive. Plaintiff filed a putative class action complaint in the United States District Court for the Central District of California on April 29, 2020 (the "Original Case"). ¶ 18. Defendant moved to dismiss based on the CSA's venue provision requiring that any suits be filed in the courts of Calloway County, Kentucky. ¶ 20. The Original Case was dismissed without prejudice on November 13, 2020. ¶ 22.

On May 13, 2021, Plaintiff re-filed in the Commonwealth of Kentucky Calloway County Circuit Court (the "Kentucky State Case"). ¶ 23. On June 9, 2021, Defendant removed the Action to this Court. ¶ 24. Plaintiff's motion to remand was denied on October 5, 2021. ¶ 38.

Defendant moved to dismiss for failure to state a claim on June 17, 2021. ¶ 39. Plaintiff opposed the motion on November 1, 2021. *Id*. The Court granted the motion in part and denied it in part on January 25, 2022. ¶ 40. Plaintiff's claims for violations of the Kentucky Securities Act, aiding and abetting breach of fiduciary duty, aiding and abetting fraud, fraud, and negligent misrepresentations and omissions all survived the motion to dismiss. *Id*.

Thereafter, Defendant sought to add a number of third-party defendants, including William Jordan, the William Jordan Funds, and Mickey Payne (an executive with the William Jordan Funds). ¶ 41. Defendant was permitted to add claims against Payne, and filed a third-party complaint on December 16, 2022. ¶ 42. Thereafter, Defendant obtained permission to file a third-party complaint against both William Jordan and OPUS Fund Services. ¶ 43. OPUS sought dismissal for lack of jurisdiction, which motion was granted on July 9, 2024. *Id.* Neither Payne nor Jordan ever entered an appearance or filed a response to Defendant's third-party complaints.

Plaintiff filed a motion for leave to amend to add parties on May 19, 2025. ¶ 48. Defendant did not oppose Plaintiff's request to add Proposed Additional Plaintiff Daniel Brager as a plaintiff in the Action, but opposed adding additional defendants. *Id.* The issue was briefed and the motion set for hearing on July 9, 2025. *Id.* However, the parties' continued negotiations through a well-respected mediator resulted in reaching a settlement in principle on July 2, 2025. ¶ 56. Plaintiff sought to continue the hearing on the motion for leave to amend on July 3, 2025 (*id.*), which motion was granted on July 7, 2025. *Id.*

## C.    SETTLEMENT DISCUSSIONS

Dring the course of discovery, the parties agreed to explore a possible settlement with the assistance of a highly skilled mediator, Judge William Meyer (ret.), a former Denver, Colorado District Court Judge with the Judicial Arbiter Group ("JAG"). ¶ 50. Judge Meyer joined JAG in 2000 and became its managing arbiter in 2011. *Id.* Both Plaintiff McNally and Proposed Additional Plaintiff Brager, as well as attorneys Berkson and Rosca, participated in the mediation in Denver on April 3, 2025. ¶ 52. Licha Farah, counsel for Kingdom Trust, and its General Counsel, Sharif Nesheiwat, attended on behalf of Defendant. *Id.* Each side submitted detailed confidential written mediation statements for Judge Meyer. ¶ 51.

The mediation lasted approximately six hours but ended in an impasse. ¶ 53. However, Judge Meyer maintained communication with the parties in an effort to facilitate a resolution to the dispute. *Id.* As a result of Judge Meyer's ongoing involvement, the parties agreed on a settlement and memorialized by a term sheet that included the critical elements of the settlement on July 7, 2025. ¶ 57.

## D.    THE PROPOSED SETTLEMENT

The Settlement Agreement[3] was executed by the Parties on November 7, 2025.  *See* Exhibit 1 to the Declaration. Pursuant to the Settlement Agreement, Defendant will pay a total of $1 million as follows: $10,000 to be paid into escrow within five business days of the Court's entry of an Order granting preliminary approval of the Parties' Settlement (the "Preliminary Approval Order"), with the balance to be paid into escrow within thirty days of the Court's entry of an Order granting preliminary approval of the Parties' Settlement (collectively, "Settlement Funds"). Plaintiffs may access up to $10,000 of the Settlement Payment to cover the cost of Class Notice ("Notice and Administration Expenses"). Should the Court decline to grant Final Approval of the Settlement, any sums remaining in escrow shall revert to Defendant. But if the Settlement becomes Final, no sums shall be returned to Defendant.

In exchange for the settlement payment, upon the Effective Date of the Settlement, Class Representatives and every other Settlement Class Member, on behalf of themselves and each of their respective heirs, executors, administrators, assigns, predecessors, and successors, and any person claiming by or through any or all of them, shall be deemed to have fully, finally, conclusively, irrevocably, and forever released, settled, compromised, relinquished, and discharged any and all of the Releasees from any and all Released Claims. *See* Settlement Agreement, § J. The definition of Released Claims has been tailored to release only claims that were asserted, could have been asserted, or in the future could be asserted, arising from, based on or relating to allegations in the Class Action. *See* Settlement Agreement, § II. A., ¶ 1. gg.

---

[3] Pursuant to Fed. R. Civ. P. 23(e)(3), the only agreement made by the parties in connection with the Settlement is the Settlement Agreement.

As a condition of settlement, Kingdom Trust agreed to produce certain financial records to Plaintiffs to allow them to determine the nature and extent of any assets remaining in the company and its ability to pay a judgment. ¶ 60. In addition, Kingdom Trust made available certain representatives of Defendant's parent company to answer any questions regarding those financial statements. *Id*. The financial statements and responses to questions confirmed that Kingdom Trust was a cash-strapped distressed company, it had given up its trust license, and its insurance coverage has lapsed. ¶ 63. It is highly doubtful that Kingdom Trust would have sufficient assets with which to satisfy a judgment if the case proceeded to trial. ¶ 64.

Should the Settlement be approved by the Court, the proposed Claims Administrator Strategic Claims Services ("SCS"), will process all claims received and will apply the plan of allocation ("Plan of Allocation") approved by the Court at the Fairness Hearing. *See* Settlement Agreement, Exhibit B (Notice), that contains the proposed Plan of Allocation). At the completion of the administration, SCS will distribute the Net Settlement Fund to eligible Claimants, and will continue to do so as long as it is economically feasible to make distributions. *See* Settlement Agreement, § II. H., ¶ 23. This is a non-reversionary settlement, and the entire $1 million Settlement Fund is for the benefit of the Settlement Class, regardless of how many claims are submitted. *Id.* § II. I., ¶ 30.

### E.    PROPOSED SCHEDULE OF EVENTS

Plaintiff respectfully proposes the following schedule for the various Settlement-related events, each of which is reflected in the proposed Preliminary Approval Order:

| | |
|---|---|
| Deadline for Class Counsel to provide Claims Administrator with Notice List | ***14 days after Preliminary Approval*** |

| Deadline for mailing Notice and Claim Forms | *14 days after Class Counsel provides the Settlement Administrator with the Notice list* |
|---|---|
| Deadline for establishing webpage and issuing press release announcing settlement | *14 days after Class Counsel provides the Settlement Administrator with the Notice list* |
| Deadline for Class Counsel to file and serve the opening papers in support of the proposed Settlement, the Plan of Allocation, the application for Attorneys' Fees, Expenses and Service Award | *30 days before the Fairness Hearing* |
| Deadline to file Claims | *75 days after mailing of Notice and Claim Form* |
| Deadline to Opt Out or Object to the Settlement | *14 days after Class Counsel files opening papers in support of the proposed Settlement, the Plan of Allocation, the application for Attorneys' Fees, Expenses and Service Award* |
| Deadline to file reply papers in support of the Settlement (if any) | *7 days after Opt-Out/Objection date* |
| Fairness Hearing | *90 days after Preliminary Approval.* |

Class Counsel requests that the Court approve the foregoing case schedule. First, the Notice sets forth the maximum amount Class Counsel will be requesting for Attorneys' Fees and Expenses and Service Awards, so Class Members will be advised of those amounts from the outset. Second, the proposed schedule provides that the opening papers in support of the proposed Settlement, the Plan of Allocation, and the application for Attorneys' Fees, Expenses and Service Award be filed 14 days before the objection deadline. The application for Attorneys' Fees, Expenses and Service Award will contain detailed declarations setting forth the time Class Counsel spent on the Action, the expenses incurred and the justification for the Service Awards, allowing sufficient time to object. *See Waid v. Snyder (In re Flint Water Cases)*, 63 F.4th 486, 500 (6th Cir. 2023) (overruling objection to fee request where class counsel's fee and expense motion was filed before the objection deadline, providing adequate information for class member to object).

8

## II.    ARGUMENT

### A.  THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

#### 1.  Public Policy Strongly Favors Settlements of Complex Actions

As a matter of public policy, settlement is a strongly favored method for resolving disputes, especially in complex class actions. *Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 899 (6th Cir. 2019) ("Courts have held that there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources.") (citation and internal quotations omitted).

#### 2.  The Preliminary Approval Process

Federal Rule of Civil Procedure 23(e) requires court approval for any settlement of a class action. *Branson v. All. Coal, LLC*, No. 4:19-cv-155-RGJ-HBB, 2025 U.S. Dist. LEXIS 131090 at *9 (W.D. Ky. July 10, 2025). "[C]lass action settlement approval involves a three-step process: (1) preliminary approval of the proposed settlement, (2) notice of the settlement to all affected class members, and (3) a final approval hearing." *Id.* (citations and internal quotations omitted); *see also Elliott v. LVNV Funding, LLC*, No. 3:16-cv-00675-RGJ, 2019 U.S. Dist. LEXIS 143692 at *16-17 (W.D. Ky. Aug. 23, 2019).

This case has "reached the first step." *Branson*, 2025 U.S. Dist. LEXIS 131090 at *9. Accordingly, "[t]he parties must show[] that the court will likely be able to both (1) approve the proposed settlement as fair, reasonable, and adequate, and (2) certify the class for purposes of judgment on the proposal." *Id.* (quoting Fed. R. Civ. P. 23(e)(1)-(2)).

It is not necessary, at the preliminary approval stage, to conduct a full settlement fairness appraisal: "preliminary approval of a class action settlement is at most a determination that there is what might be termed probable cause to submit the proposal to class members and hold a full-

scale hearing as to its fairness." *Wayside Church v. Van Buren Cnty.*, 103 F.4th 1215, 1222 (6th Cir. 2024) (citation and internal quotations omitted); *see also Branson*, 2025 U.S. Dist. LEXIS 131090 at *12 (question at the preliminary approval stage is simply whether the settlement is fair enough to begin the class notice process).

### 3. The Standard for Preliminary Approval

For both preliminary and final approval, Rule 23 requires the Court to consider whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided to the class is adequate, taking into account:

       (i)    the costs, risks, and delay of trial and appeal;

       (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

       (iii)    the terms of any proposed award of attorney's fees, including the timing of payment; and

       (iv)    any arrangement required to be identified under rule 23(e); and

(D)    the proposal treats class members equitably relative to each other.

*Thompson v. Seagle Pizza*, No. 3:20-cv-16-DJH-RSE, 2021 U.S. Dist. LEXIS 254142 at *5 (W.D. Ky. June 1, 2021) (quoting Fed. R. Civ. P. 23(e)(2)).

As *Thompson* further held:

Paragraphs (A) and (B) of Rule 23(e)(2) identify matters that might be described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement, while paragraphs (C) and (D) focus on what might be called a 'substantive' review of the terms of the proposed settlement. . . . These factors, which are also part of the 2018 amendments to Rule 23, are not meant to displace any factor previously relied on by the courts, but rather to focus the

10

court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal. . . .

*Thompson*, 2021 U.S. Dist. LEXIS 254142 at *5-6 (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendments). The court continued:

> The rule largely encompasses the factors that have been employed by the Sixth Circuit:
>
>> (1) the risk of fraud or collusion, (2) the complexity, expense and likely duration of the litigation, (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits, (5) the opinions of class counsel and class representatives, (6) the reaction of absent class members, and (7) the public interest.
>
> *       *       *
>
>> In addition to the seven factors listed above, the Sixth Circuit ha[s] also looked to whether the settlement gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members.
>
> *       *       *
>
> The Sixth Circuit does not appear to have considered the new version of Rule 23(e)(2). Since the amendment, courts within the Sixth Circuit have been applying both sets of factors . . . Given their substantial overlap, the two sets can be considered together.

2021 U.S. Dist. LEXIS 254142 at *5-7 (citations and internal quotations omitted).

The proposed settlement satisfies each of the Rule 23(e) factors and the factors traditionally considered by the Sixth Circuit.

### 4.  The Proposed Settlement Satisfies Each of the Rule 23(e) Factors

#### i.    The Settlement Is the Result of Hard-Fought Litigation and Thorough Arm's-Length Negotiations with the Assistance of a Mediator.

The proposed Settlement satisfies the factors set forth in Rule 23(e)(2)(A) (adequate representation) and (B) (arms-length negotiation), and the Sixth Circuit factors of (1) (risk of fraud

11

or collusion), (3) (the amount of discovery engaged in by the parties), and (5) (the opinions of class counsel and the class representatives).

Courts have long recognized an initial presumption that a proposed settlement is fair and reasonable when it is the product of arm's length negotiations by experienced counsel. *See McClurg v. Dall. Jones Enters*, No. 4:20-cv-201-RGJ-HBB, 2025 U.S. Dist. LEXIS 131093 at *8-9 (W.D. Ky. July 10, 2025); *Bowen v. Paxton Media Grp, LLC*, No. 5:21-CV-00143-GNS, 2024 U.S. Dist. LEXIS 61269 at *24 (W.D. Ky. Apr. 2, 2024) (preliminary approval was appropriate where, *inter alia*, "the record reflect[ed] that proposed Settlement Agreement was negotiated at arm's length over a period of time by the parties").

Here, the Parties have vigorously litigated the Action since its inception, and the Settlement was achieved only after hard fought, arm's length negotiations with the assistance of an experienced mediator, between counsel with considerable knowledge and expertise litigating investment fraud class actions and a thorough knowledge of the strengths and weaknesses of their claims. This case has been pending for five years across various courts. Proposed Class Counsel developed a deep understanding of the facts of the case and merits of the claims and the likelihood of recovery through their analysis of, *inter alia*: (i) publicly available information regarding the William Jordan Fund Scheme, including information available from the docket in the William Jordan Fund bankruptcy; (ii) Proposed Class Counsel's investigation and research concerning publicly available information regarding Defendant and its failure to abide by the requisite regulatory standards; (iii) briefing on Defendant's motions to dismiss; (iv) the review and analysis of thousands of pages of documents produced by Defendant through formal discovery; (v) depositions of Defendant's key witnesses, including its former President/COO; (vi) a review of Defendant's financial records; (vii) extensive discussions between counsel regarding the merits of

the parties' claims; and, (viii) consultations with potential experts regarding a trust company's due diligence and oversight obligations.

While the mediation conducted on April 3, 2024 ended with an impasse that day, the mediator's continued involvement led to the instant Settlement Agreement. With an informed understanding, the Plaintiffs agreed to the Settlement. There has been no collusion, and "the fact that the Settlement was reached following mediation strongly suggests an absence of collusion." *See Thompson*, 2021 U.S. Dist. LEXIS 254142 at *8; *see also Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F.Supp. 2d 521 (E.D. Ky. 2010) ("Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary.") (citation and internal quotations omitted).

Additionally, throughout the Action, Plaintiffs had the benefit of the advice of knowledgeable counsel well-versed in class action litigation and investment fraud cases.[4] Courts give considerable weight to the opinion of experienced and informed counsel. *See, e.g.*, *UAW v. GMC*, No. 05-CV-73991-DT, 2006 U.S. Dist. LEXIS 14890, at *57 (E.D. Mich. Mar. 31, 2006) ("The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement: 'It is … well recognized that the court should defer to the judgment of experienced counsel who has competently evaluated the strength of the proofs.'") (citation omitted); *Thompson*, 2021 U.S. Dist. LEXIS 254142 at *7-8 (representation by experienced counsel who favor settlement supports preliminary approval).

Proposed Class Counsel and Plaintiff Daniel McNally and Proposed Additional Plaintiff Daniel Brager strongly support the Settlement. ¶ 59.

---

[4] Resumes of proposed Class Counsel are attached to the Declaration as Exhibits B and C.

### ii.    The Relief Provided by the Settlement is Adequate

The proposed Settlement satisfies the factors set forth in Rule 23(e)(2)(C) in that the relief provided to the class is adequate.

### a.  The Settlement Amount is Adequate in Light of the Limited Funds

As an initial matter, the primary factor driving the Settlement amount was Defendant's inability to pay a larger settlement or satisfy a judgement. While Plaintiffs and Proposed Class Counsel acknowledge that the proposed Settlement of $1 million is modest in light of the estimated class losses, it is the opinion of Proposed Class Counsel that it is the maximum amount recoverable under the circumstances. *See* ¶¶ 60-64.

Based on Proposed Class Counsel's review of Defendant's financial statements and tax returns, and Class Counsel's interview of Defendant's new parent company representatives, including its Chief Financial Officer ("CFO"), Proposed Class Counsel confirmed:

- Defendant's new parent company acquired Defendant's assets in late 2023;

- Defendant's liabilities remain with Defendant;

- At the time of the acquisition, Defendant was a distressed company facing a liquidity crunch, in part a result of having to pay a $1.5 million civil money penalty assessed against Defendant by the Financial Crimes Enforcement Network ("FinCEN") of the U.S. Department of Treasury in 2023;

- Following the 2023 FinCEN penalty, Defendant gave up its trust license;

- Defendant's insurance coverage lapsed, so there is no insurance coverage available to pay this claim;

- Defendant was reducing its employee count and payroll; and

14

- Defendant's new parent company purchased Defendant's assets to gain access to Defendant's customer base, not because Defendant was a profitable company or had prospects for turn-around.

¶¶ 55, 63.

Thus, if Plaintiffs continued to litigate, substantial questions existed whether Plaintiffs would be able to establish successor liability, and there was substantial doubt regarding Defendant's ability to pay a judgment. It is Proposed Class Counsel's view that the $1 million proposed Settlement is a good result in light of the financial risks and unlikelihood of a larger recovery. ¶¶ 55, 64.

### b. The Costs, Risks and Delay of Trial and Appeal and the Risk of Maintaining Class Action Status

The proposed Settlement is adequate in light of the costs, risks, and delay of trial and appeal (Rule 23(e)(2)(C) factor (i)); the complexity, expense and likely duration of the litigation (Sixth Circuit factor (2)); the likelihood of success on the merits (Sixth Circuit factor (4)); and the additional risk of maintaining class action status.

The Settlement represents a prompt and substantial tangible recovery, without the considerable risk, expense, and delay of completing extensive fact and expert discovery and prevailing at class certification, summary judgment, trial, and post-trial litigation. *See, e.g.*, *Déjà Vu Consulting, Inc.*, 925 F.3d at 895 (finding that settlement is proper where a court analyzes and balances the benefits to the class against whatever the class gives up in the settlement, and finds the balance in favor of the class); *Sellards v. Midland Credit Mgt., Inc.*, No. 1:20-CV-02676, 2023 U.S. Dist. LEXIS 92700 (N.D. Ohio May 2, 2023) (finding that the uncertainty in litigation and avoidance of wasteful and expensive litigation induces consensual settlements).

While Plaintiffs believe that they could have succeeded in establishing each of the elements of the alleged claims, they acknowledge that they faced considerable obstacles in continuing the Action. For instance, if the case were to proceed, Plaintiffs would have had to brief, argue, and the Court would be called to rule on, Plaintiffs' anticipated motion for class certification. Even assuming a class was certified, Defendant would have likely challenged certification in a Rule 23(f) petition to the Sixth Circuit. *See Thompson*, 2021 U.S. Dist. LEXIS 254142 at *9 (having to face class certification and prove elements of claims if litigation were to continue when compared to the "the broad relief offered by the settlement," weighed in favor of settlement).

Even if Plaintiffs were able to obtain certification of a class, they would have faced the summary judgment, trial, and the inevitable appeal. Defendant has steadfastly denied liability and raised various arguments that could have precluded recovery for the entire Class or a large portion of Class members. *See, e.g. Williams v. Vukovich,* 720 F.2d 909, 922 (6th Cir. 1983) ("A decree is a compromise which has been reached after the risks, expense, and delay of further litigation have been assessed. Class counsel and the class representatives may compromise their demand for relief in order to obtain substantial assured relief for the plaintiffs' class.") (citations omitted).

Moreover, Defendant maintains it had no knowledge of Jordan's fraud and had no role therein. Plaintiffs contend that Defendant had actual knowledge or that its conduct amounted to willful blindness as it processed Jordan's requested transaction without question. One of the critical issues to be addressed should the matter proceed to trial is whether Plaintiffs would be able to prove actual knowledge or that Defendant's conduct amounted to willful blindness. Defendant's witnesses steadfastly maintained that they simply followed instructions delivered by authorized Jordan personnel, as they were contractually required to do, and had no understanding that they

16

were facilitating a Ponzi scheme. Plaintiffs would have argued that willful blindness is an exception to the requirement that a defendant maintain actual knowledge. *See e.g., United States v. Hansen*, 791 F.3d 863, 868 (8th Cir. 2015) (observing that "the concept of willful blindness is a limited exception to the requirement of actual knowledge. . . "). However, a jury might conclude that Defendant did not obtain actual knowledge or was not willfully blind, and therefore did not maintain actual knowledge of its wrongdoing until some later point, or not at all. The meaningful question regarding Defendant's knowledge, or the application of an exception to that requirement to find liability, weighs in favor of an approval of the Settlement. *See Newton v. Am. Debt Servs., Inc.*, 2016 WL 7743686, at *5 (N.D. Cal. Jan. 15, 2016) (difficulties in establishing the existence of a conspiracy or that defendant aided and abetted weighed in favor of preliminary approval); *New Eng. Health Care Emples. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006) (certain and immediate benefits to the class outweigh the possibility of obtaining a better result at trial, especially when considering additional expenses and delays as well as the complexity of the matter).

Another meaningful issue is that, should Plaintiffs succeed on their claims, the victory may be pyrrhic should it be determined that there are no solvent successor entities liable for Defendant's wrongdoing. As explained above, Class Counsel considered Defendant's limited assets and the fact that it has no insurance coverage for the claim, and therefore, Defendant's resources will be diminished by the defense counsel fees to be incurred through additional discovery, class certification, summary judgment, trial, and appeal. It is a near certainty that Kingdom Trust would not have sufficient assets to pay a judgment if one were obtained.

In light of the substantial risks and expense of continued litigation, and compared to the certain and prompt recovery of $1.0 million, the Settlement is a good and adequate result that

17

merits preliminary approval.

### c.  The Proposed Method of Distributing Relief to the Class is Effective

The proposed method of distributing relief to the class satisfies Rule 23(e)(2)(C)(ii). Class members will be mailed a Claim Form to their last known address based on a mailing list compiled by proposed Class Counsel through a thorough review of the filings in the William Jordan bankruptcy proceedings. ¶ 72. In addition, Defendant, as custodian to the WJA Funds, has provided Plaintiffs' counsel with a list containing the names and addresses of the WJA Fund investors maintained by Defendant. *Id.* Also, the Claims Administrator will establish a web page for this case containing key documents, such as the complaint, settlement approval papers and the Notice and Claim Form. ¶ 73.

Any class member who submits a timely and valid Claim Form will be mailed a check in the amount of the class member's pro rata share of the Net Settlement Fund. If the Claim Form is deficient, the class member will be notified and given the opportunity to correct the deficiency, and if needed, to receive the assistance of the Claims Administrator in doing so. See Settlement Agreement ¶ 20; *See also Thompson*, 2021 U.S. Dist. LEXIS 254142 at *9-10 (approving similar method of distribution).

### d.  The Terms of Any Proposed Award of Fees and Expenses Including the Timing of Payment

The relief provided for the class is adequate, taking into account Class Counsel's anticipated request for an Attorneys' Fees and Expense Award (Rule 23(e)(2)(c) factor (iii)).

Trial courts in the Sixth Circuit have discretion to calculate an award of attorneys' fees by using either (1) a percentage of the fund calculation, or (2) a lodestar/multiplier approach. *Back v. Ray Jones Trucking, Inc.*, No. 4:22-cv-00005-GNS-HBB, 2025 U.S. Dist. LEXIS 162558 at

*17. "[C]ourts in the Sixth Circuit have indicated their preference for the percentage-of-the-fund method in common fund cases." *In re Cardizem CD Antitrust Litig*., 218 F.R.D. 508, 532 (E.D. Mich. 2003).

As set forth in the Notice, Counsel intends to move for attorneys' fees of no more than 33 1/3% of the Settlement Fund and litigation expenses of no more than $20,000 to be paid when the Settlement is approved. ¶¶ 76, 77. "The rate of one-third the gross settlement amount is well-within the range of attorneys' fees previously approved by other class action settlements by the Sixth Circuit and this Court." *Back,* 2025 U.S. Dist. LEXIS 162558 at *18 (citing *Green v. Platinum Rests. Mid-Am, LLC*, No. 3:14-CV-439, 2022 U.S. Dist. LEXIS 76455 (W.D. Ky. Apr. 27, 2022) (finding attorneys' fees of 39% of the common fund reasonable); *New England Health Care Emples. Pension Fund*, 234 F.R.D. at 633 ("Fee awards in common fund cases typically range from 20 to 50 percent of the common fund created; *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig*., No. 3:08-MD-01998, 2009 U.S. Dist. LEXIS 119870, 2009 WL 5184352, at *11 (W.D. Ky. Dec. 22, 2009) (preliminarily approving attorneys' fees representing over 50% of the common fund).

Moreover, a fee of 33 1/3% would amount to $333,333.33, which is substantially less than the value of the lodestar that Counsel have expended in this case to date. Indeed, the requested fee would provide a significant negative "multiplier" to Counsel. The basis of Counsels' fee and expense request will be detailed in their upcoming motion requesting fees and expenses. ¶ 76.

Class Counsel's maximum expense figure is based upon total-to-date case expenses plus a "cushion" to cover incurred expenses that have not yet been invoiced, or expenses that will be incurred between now Final Approval. ¶ 77. Class Counsel will only seek reimbursement of actual expenses incurred. *Id.*

19

In addition, Notice and Administration Expenses will be paid from the Settlement Fund. *See* Settlement Agreement ¶ 15. The Claims Administrator estimates that that the costs of Notice and administration of the Settlement will not exceed $25,000. ¶ 68.

### e.   The Proposal Treats Class Members Equitably Relative to Each Other

Plaintiffs will seek approval of a Plan of Allocation as set forth in the Notice that distributes the Net Settlement Fund pro rata to class members who submit valid Claim Forms based on their losses relative to the losses of Authorized Claimants as a whole. All Authorized Claimants will be treated the same.

In addition, as set forth in the Notice, Class Counsel intends to apply for Service Awards for Messrs. McNally and Brager in the amount of $15,000 each, in light of the time and effort they expended on this litigation. Mr. McNally has seen this litigation through the five years it has been pending. While Mr. Brager was more recent to the litigation, his efforts have been considerable. Among their efforts, both Messrs. McNally and Brager searched for and produced responsive documents to Defendant, both prepared for and were deposed by Defendant's counsel, and both traveled from southern California to Denver, Colorado to participate in the all-day in-person mediation before Judge Meyer. ¶¶ 46-47, 52. Service Awards "'are common in class action settlements'" and "are 'routinely approved' by courts." *See Thompson,* 2022 U.S. Dist. LEXIS 81666 at *26.

### f.   There are No Agreements Required to be Identified Under Rule 23(e)(3)

There are no agreements between the parties other than the Settlement Agreement and Exhibits thereto, thus there are no agreement that must be identified under Rule 23(e)(3).

**B.    THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS AND APPOINT MESSRS. MCNALLY AND BRAGER AS CLASS REPRESENTATIVES**

**5.    Standards Applicable to Class Certification**

Courts have acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "District courts have broad discretion in certifying class actions but must exercise that discretion within the framework of Rule 23." *Elliott,* 2019 U.S. Dist. LEXIS 143692 at \*5-6 (citations and internal quotations omitted). A settlement class, like other certified classes, must satisfy all the requirements of Rule 23(a) and (b). *See In re Flint Water Cases*, 499 F. Supp. 3d 399 (E.D. Mich. 2021). However, the manageability concerns of Rule 23(b)(3) are not at issue for a settlement class. *See Amchem Prods*., 521 U.S. at 593 ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested."). As discussed below, the Action satisfies all the factors for certification.

**6.    The Settlement Class Meets the Requirements of Rule 23(a)**

**i.    Rule 23(a) Numerosity**

Rule 23(a)(1) requires that "'the class be so numerous that joinder of all members is impracticable.'" *Elliott,* 2019 U.S. Dist. LEXIS 143692 at \*7 (quoting Fed. R. Civ. P. 23(a)(1)). There is no fixed number of class members which either compels or precludes the certification of a class, but it is generally accepted that a class of forty or more members is sufficient to satisfy the numerosity requirement. *Thompson*, 2021 U.S. Dist. LEXIS 254142 at \*14. Here, there can be no dispute that the Settlement Class satisfies numerosity. Based on Class Counsel's review of the Jordan bankruptcy proceedings, and the data obtained from Defendant, the Class consists of approximately 200 investors, making joinder impracticable. ¶ 72. Courts in this District find such

21

numbers sufficient to satisfy numerosity. *See, e.g., Mitcham v. Intrepid U.S.A., Inc*., No. 3:17-cv-703-CHB, 2019 U.S. Dist. LEXIS 88870 at *7 (W.D. Ky. May 28, 2019) (joinder of settlement class of 134 persons "would certainly be impracticable[,]" therefore, numerosity standard had been met); *Lott v. Louisville Metro Gov't*, No. 3:19-CV-271-RGJ, 2021 U.S. Dist. LEXIS 50153 at *31 (W.D. Ky. March 17, 2021) (numerosity satisfied where plaintiff showed the class will consist of at least 40 members).

### ii.    Rule 23(a)(2) Questions of Law or Fact Are Common

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Sixth Circuit construes this requirement liberally, and has stated that that there need only be a single question of law or fact applicable to the class – so long as that the resolution of that issue will advance the litigation. *Savidge v. Pharm-Save, Inc.*, 727 F. Supp. 3d 661, 698 (W.D. Ky. 2024); *Elliott,* 2019 U.S. Dist. LEXIS 143692 at *8. In this case, common questions of law and fact abound. The central questions are the same for all class members, including whether Defendant: comingled WJA Funds into a singular bank account; improperly aided and abetted the William Jordan Scheme; sent false or misleading periodic statements to WJA Fund investors; and whether Defendant's misconduct entitles Plaintiff and members of the Class to damages; and what remedies are appropriate.

### iii.    Rule 23(a)(3) Plaintiff's Claims Are Typical

Rule 23(a)(3) is satisfied where the claims of the proposed class representatives arise from the same course of conduct that gives rise to the claims of the other class members, and where the claims are based on the same legal theory. *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007). Rule 23(a)(3) does not require plaintiffs to show that their claims are identical on every issue to those of the class, but merely that significant common questions, the answers to which

22

will advance the litigation, exist. *Sprague v. GMC*, 133 F.3d 388, 398 (6th Cir. 1998). Differences in the amount of damages, the size or manner of purchase, type of purchase, and even the specific documents influencing the purchase will not render the claim atypical. *Bowers v. Windstream Kentucky E., LLC*, 278 F.R.D. 170, 174 (W.D. Ky. 2011); *In re Packaged Ice Antitrust Litig.*, 322 F.R.D. 276, 285-86 (E.D. Mich. 2017). Here, Plaintiffs' claims are typical to those of the other Members of the Class. Plaintiffs and all members of the Settlement Class were investors in the William Jordan Scheme and suffered the exact same loss in proportion to their investment.

### iv. Rule 23(a)(4) The Class Representatives Are Adequate

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Sixth Circuit uses two questions when determining the adequacy prong: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members? and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? *Beattie,* 511 F.3d at 563

Here, the proposed Class Representatives invested significant amounts of money in the William Jordan Fund Scheme, were damaged thereby, and will continue to represent the interests of the Settlement Class fairly and adequately. *See* ¶¶ 30-31, 46-47, 52. There is no antagonism or conflict of interest between the proposed Class Representatives and the proposed Settlement Class. Plaintiffs and Members of the Settlement Class share the common objective of maximizing their recovery from Defendant when considering the totality of the relevant circumstances.

Plaintiffs have demonstrated their commitment to prosecuting this Action, both responded to Defendant's discovery requests and produced responsive documents, each were deposed by counsel for Defendant, and both traveled to Denver, Colorado for the mediation. ¶ 52. For those reasons, the Court should approve Mr. Brager's application to be added as a Plaintiff and appoint

23

Messrs. McNally and Brager as Class Representatives.

Proposed Class Counsel are also "adequate" to represent the Settlement Class, given their extensive experience and expertise in complex class action proceedings throughout the United States.[5] Class Counsel have ably and effectively represented Plaintiffs and the proposed Settlement Class throughout the Action.

### 7. The Settlement Class Meets the Requirements of Rule 23(b)(3)

#### i. Common Questions of Law or Fact Predominate

Rule 23(b)(3) sets forth two requirements, predominance and superiority. The predominance requirement asks whether the "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). This inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods*., 521 U.S. at 623. "A district court must determine whether the questions common to the class are at the heart of the litigation." *Elliott,* 2019 U.S. Dist. LEXIS 143692 at *13 (citation and internal quotations omitted). "The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." *Id.* (citation omitted)*.* "Common questions need only predominate: they need not be dispositive of the litigation." *Id.* (citation omitted)*.* Here, common questions of law and fact predominate over individual questions because Defendant's alleged misconduct affected all Settlement Class Members in the same manner (i.e., through actual knowledge and substantial assistance of the William Jordan Scheme). Predominance of common questions generally will be found when, as alleged here, investors have been similarly harmed over

---

[5] *See* Rosca Scarlato and McCarthy Lebit resumes at Exhibits B and C of the Declaration.

time by a common scheme. *Manners v. Am. Gen. Life Ins. Co.*, No. 3-98-0266, 1999 U.S. Dist. LEXIS 22880, at *46 (M.D. Tenn. Aug. 10, 1999) (Predominance is satisfied "when the litigation will concern similar or standardized oral representations containing significant legal and factual questions which are common to the class.") (internal citation and quotes omitted).

### ii.    A Class Action is a Superior Method of Adjudication

Finally, Rule 23(b)(3) also requires that the action be superior to other available methods for the fair and efficient adjudication of the controversy. The rule lists several matters pertinent to this finding: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D); *see also Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield*, 654 F.3d 618 (6th Cir. 2011). Each factor weighs in favor of superiority here. To undersigned counsel's knowledge, no other investors have pursued similar claims against Defendant (¶ 18), satisfying the first and second factors. The third factor – concentration of claims in this forum – weighs in favor of class certification insofar as the contracts between Defendant and the WJA Funds call for any claims to be brought in courts in Calloway County. Defendant enforced that provision, then removed Plaintiff's case to this Court. Thus, any affected investor would also find themselves in this forum. In addition, the amount of damages incurred by individual class members likely cannot justify pursuing individual actions, making a class action a valuable tool for all class members. *Elliott,* 2019 U.S. Dist. LEXIS 143692 at *14 (citation omitted). Finally, the difficulty in managing a class action is modest given that there are approximately 200 class members and the proposed Class is for settlement purposes alone.

Further, without the settlement class device, Defendant could not obtain a class-wide release, and therefore would have had little, if any, incentive to settle. Certification of the Settlement Class will allow the Settlement to be administered in an organized and efficient manner. Accordingly, the Court should preliminarily certify the Settlement Class.

## C.    THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS

The manner and form of Notice constitutes the best notice practicable under the circumstances and satisfies due process.

Rule 23(c)(2)(B) requires notice of the pendency of the class action to be "the best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). The Sixth Circuit has stated: "We have held that due process requires that notice to the class be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 759 (6th Cir. 2013) (internal citation and quotations omitted). Rule 23(c)(2)(B) requires that the notice must include in plain, easily understood language:

(i)     the nature of the action;

(ii)    the definition of the class certified;

(iii)   the class claims, issues, or defenses;

(iv)    that a class member may enter an appearance through an attorney if the member so desires;

(v)     that the court will exclude from the class any member who requests exclusion;

(vi)    the time and manner for requesting exclusion; and

26

(vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

*Elliott,* 2019 U.S. Dist. LEXIS 143692 at *27. "The notice to the class members must include enough information to allow the class members to make an informed choice of whether to approve or disapprove the settlement." *Id.* at *28.

The proposed form of Notice attached as Exhibit B to the Settlement Agreement satisfies Rule 23(c)(2)(B) and the Sixth Circuit standard. It describes the terms of the Settlement and the Settlement Class's recovery; the considerations that caused Plaintiffs and Class Counsel to conclude that the Settlement is fair, adequate, and reasonable; the maximum Attorneys' Fees and Expenses and Service Award that may be sought; the procedure for requesting exclusion from the Settlement Class; the dates and procedure for objecting to the Settlement; the dates and procedure for participating in the Settlement; the proposed Plan of Allocation; and the date and place of the Fairness Hearing. ¶ 70. The form of notice includes enough information to allow the class members to make an informed choice of whether to approve or disapprove the settlement. *See also Déjà Vu Consulting, Inc.*, 925 F.3d at 900.

Second, the manner of providing notice satisfies due process. Class Counsel proposes to provide Class Members Notice by individual first-class mail addressed to all Class Members who can reasonably be identified and located, using information obtained though the William Jordan Bankruptcy and from Defendant. ¶ 72. In addition, the Claims Administrator will create a case-specific page on its website that will contain the Notice and Claim Form, along with additional documents, including a complete copy of the Settlement Agreement and the instant preliminary approval papers and, when filed, the motions for final approval and for Attorneys' Fees, Expenses and Service Awards. ¶ 73. For additional coverage, Class Counsel will issue a press release over a national news wire informing Class members of the Settlement. ¶ 74.

Due process does not require actual notice to each party intended to be bound by the decision. *In re Correctcare Data Breach Litig.*, No. 5:22-319-DCR, 2024 U.S. Dist. LEXIS 166754 at *10 (E.D. Ky. Sept. 17, 2024)(citing *Fidel v. Farley*, 534 F.3d 508, 513 (6th Cir. 2008)). "Instead, 'the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *Id*. at *10 (*quoting Fidel,* 534 F.3d at 513). Because of the availability of name and address data for virtually all, if not all, potential Class Members, the Claims Administrator is able to reach potential class members through individual mailed notice. Class Counsel submits that the direct mail notice, along with the additional coverage provided by the website and press release constitutes the best notice practicable under the circumstances.

The Notice will, when mailed as provided for in the Preliminary Approval Order submitted herewith, fairly apprise Settlement Class Members of the Settlement and their options with respect thereto, and fully satisfy all due process requirements. The proposed Notice here satisfies each of the Rule 23(c)(2)(B) requirements.

## D.    APPOINTMENT OF CLASS COUNSEL

"'A court that certifies a class must appoint class counsel.'" *Elliott,* 2019 U.S. Dist. LEXIS 143692 at *14 (quoting Fed. R. Civ. P 23(g)). "In making that determination, the Court must consider:

> '(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions; other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.'"

*Elliott,* 2019 U.S. Dist. LEXIS 143692 at *14-15(quoting Fed R. Civ. P. 23(g)(1)(A)).

Both Rosca Scarlato and McCarthy Lebit have done extensive work on this case since its

inception as detailed in the Declaration, including successfully defeating Defendant's motion to dismiss, propounding discovery, deposing Defendant's witnesses, defending the depositions of Plaintiffs, conducting the mediation before Judge Meyer, negotiating the terms of the Settlement and preparing the Settlement papers, and submissions in connection with the approval process. Proposed Class Counsel has substantial experience handling class actions and the types of claims asserted herein, as detailed in the resumes attached to the Declaration, and have committed the necessary resources to litigating this matter. For those reasons, the Court should appoint Alan Rosca and Paul Scarlato of Rosca Scarlato and Hugh Berkson of McCarthy Lebit as Class Counsel.

### E.    APPROVAL OF PLAINTIFFS SELECTION OF CLAIMS ADMINISTRATOR

Finally, Plaintiffs also request that the Court approve their selection of Strategic Claims Services ("SCS") as the Claims Administrator to provide Notices to Settlement Class Members, to process Claim Forms, and to administer the Settlement. As discussed in the Declaration, SCS is a recognized leader in legal administration services for class action settlements and legal noticing programs and has successfully administered numerous complex class action settlements involving Ponzi schemes, and other class actions involving allegations of financial fraud. Proposed Class Counsel has worked SCS many times over the past 25 years and selected them due to their track record for very high-quality work, responsiveness and reasonable fees. ¶¶ 65-69.

### III.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court issue an order substantially in the form of the proposed Preliminary Approval Order attached as Exhibit 1 to the Settlement Agreement: (a) preliminarily approving the Settlement; (b) holding that the manner and form of Notice set forth in the Preliminary Approval Order satisfies due process and provides the best notice practicable under the circumstances, and ordering that Notice be provided to the

Settlement Class; (c) setting dates for the filing of papers in support of Final Approval and an Attorneys' Fee, Expense and Service Award, for opting-out or objecting to the Settlement, to file Claim Forms, and for a Fairness Hearing; (d) approving Proposed Additional Plaintiff Daniel Brager's request to be added as a Plaintiff; (e); appointing Strategic Claims Services as Claims Administrator; (f) preliminarily certifying the Settlement Class and appointing Messrs. McNally and Brager as Class Representatives; (g) appointing Rosca Scarlato and McCarthy Lebit as Class Counsel; and (h) granting such other and further relief as may be required.

Dated: November 7, 2025                    Respectfully submitted,

*/s/ Alan L. Rosca (pro hac vice)*
**ROSCA SCARLATO, LLC**
Alan Rosca (OHBN 0084100)
2000 Auburn Drive, Suite 200
Beachwood, OH 44122
Telephone: (216) 946-7070
Facsimile: (216) 340-1005
Email: arosca@rscounsel.law

Paul Scarlato (PABN 47155)
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
W. Conshohocken, PA 19428
Telephone: (216) 946-7070
Facsimile: (216) 340-1005
Email: pscarlato@rscounsel.law

**MCCARTHY LEBIT CRYSTAL & LIFFMAN**
Hugh D. Berkson (OHBN 0063997)
1111 Superior Avenue East, Suite 2700
Cleveland, OH 44114
Telephone: (216) 696-1422
Facsimile: (216) 696-1210
Email: hdb@mccarthylebit.com

**BRYANT LAW CENTER, PSC**
Wm. Kevin Shannon

30

601 Washington Street
P.O. Box 1876
Paducah, KY 42002-1876
Telephone: (270) 442-1422
Facsimile: (270) 443-8788
Email: kevin.shannon@bryantpsc.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 7, 2025, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Licha H. Farah, Jr.
Whitney N. Williams
Ward, Hocker & Thornton, PLLC
Vine Center
333 West Vine Street, Suite 1100
Lexington, KY 40507
*Counsel for Defendant*

By: */s/ Alan Rosca*
    Alan L. Rosca
    *Counsel for Plaintiff*