**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**

**DANIEL MCNALLY**, *individually and on behalf of all others similarly situated* — **PLAINTIFFS**

**v.** — **No. 5:21-cv-68-BJB**

**THE KINGDOM TRUST COMPANY, ET AL.** — **DEFENDANTS**

* * * * *

# FINAL APPROVAL OF CLASSWIDE SETTLEMENT

**I. The Litigation.** This case concerns an alleged Ponzi scheme and the distribution of Kingdom Trust's dwindling assets to defrauded investors. The alleged perpetrator of that scheme, William Jordan, is by now the *former* manager of investment funds associated with The Kingdom Trust. Jordan filed for bankruptcy while the SEC was investigating him for securities fraud. In the ensuing enforcement proceeding, a federal district court ordered him to disgorge whatever "ill-gotten gains" he may have retained. *Securities & Exchange Commission v. Jordan*, No. 8:18-cv-852, DN 13 at 4 (C.D. Cal. June 7, 2018).

Unsatisfied by whatever recovery that suit may have delivered, and presumably uninterested in further pursuing the presumably judgment-proof Jordan, investors "in or through the William Jordan Scheme" filed a separate suit against the Kingdom Trust. Proposed Settlement Agreement (DN 146-1) at 6–7. They originally sued in California federal court, and then tried again by filing this suit in Kentucky state court. Kingdom Trust removed to this Court, defeated a remand motion, and lost (in part) a motion to dismiss. *See* Order Denying Remand Motion (DN 27); Order Granting in Part and Denying in Part Motion to Dismiss (DN 32). The parties conducted discovery, the Plaintiffs tried (and failed) to add more defendants, and all parties engaged in further motions practice. *See* Order Granting Motion to Dismiss Third-Party Complaint (DN 98).

**II. The Settlement.** Four years after removal, following more discovery and negotiations, the parties proposed a settlement. *See* Motion for Preliminary Approval (DN 145); Proposed Agreement (DN 146-1). In January 2026, the Court granted preliminary approval and directed notice to the class. *See* Preliminary Approval Order (DN 149). After the notice-and-objection period, the Court held a final fairness hearing to evaluate the proposed settlement. *See* DN 154; FED. R. CIV. P. 23(e)(2).

Few if any questions emerged regarding the appropriateness of classwide adjudication of these claims. A settlement class must still qualify as a class under Rule 23(a) & (b). *See Amchem Products v. Windsor*, 521 U.S. 591, 621 (1997) ("[T]he 'class action' to which Rule 23(e) refers is one qualified for certification under Rule 23(a) and (b)."). Nothing raised questions about whether the class "satisf[ies] all four of the Rule 23(a) prerequisites—numerosity, commonality, typicality, and adequate representation." *Young v. Nationwide Mutual Insurance Co.*, 693 F.3d 532, 537 (6th Cir. 2012). Nor about whether this proposed Rule 23(b)(3) class addressed "questions common to the class" that "predominate over questions affecting only individual members," such that "class resolution [would be] superior" to other ways of resolving the controversy. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008). So the Court has little hesitation in handling this motion and its contemplated relief in the context of *pro rata* recovery for a class of investors.

As to the terms of any proposed settlement, judges ordinarily needn't (and shouldn't) concern themselves with the details of arms-length dispute resolution. In class litigation, however, judges "cannot rely on the adversarial process to protect the interests of the persons most affected by the litigation—namely, the class." *In re Dry Max Pampers Litigation*, 724 F.3d 713, 718 (6th Cir. 2013). That's because "a settling defendant is concerned only with its total liability" and "not the manner in which that amount is *allocated* between the class representatives, class counsel, and unnamed class members." *Id.* at 717. "Because class actions are rife with potential conflicts of interest …, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004).

In service of this principle, judges must satisfy themselves that the proposed settlement is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e). In the Sixth Circuit, that analysis turns on two overlapping sets of factors—one that comes from Rule 23(e) itself, the other from caselaw that developed before the Federal Rules provided its own list of "core concerns" for evaluating classwide settlements. *See Wayside Church v. Van Buren County*, No. 24-1598, 2025 WL 2829601, at *10 (6th Cir. Oct. 6, 2025) (discussing how 2018 amendment and Advisory Committee Note affected circuit practice under Rule 23(e)(2)). Under Rule 23(e)(2), courts consider whether the class representatives and counsel adequately represented the class, negotiated at arm's length, and provided "adequate" and "equitabl[e]" classwide relief. *See In re East Palestine Train Derailment*, 158 F.4th 704, 713 (6th Cir. 2025) (applying FED. R. CIV. P. 23(e)(2)). Prior Sixth Circuit caselaw, not yet overruled or even displaced, identifies seven related considerations: "(1) the risk of fraud or collusion, (2) the complexity, expense, and likely duration of the litigation, (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the

merits, (5) the opinions of class counsel and class representatives, (6) the reaction of absent class members, and (7) the public interest." *Does 1–2 v. Déjà Vu Services, Inc.*, 925 F.3d 886, 894–95 (6th Cir. 2019). The "burden of proving the fairness of the settlement is on the [settlement's] proponents." *Dry Max*, 724 F.3d at 719 (quoting 4 NEWBERG ON CLASS ACTIONS § 11:42 (4th ed. 2002)).

This proposed settlement reflects an effort to make the best of a bad situation. Like Jordan, the Kingdom Trust is no longer making money that could fund anything approaching a complete recovery for its former investors. Details about its current status remain sketchy. According to the lawyers at the fairness hearing, Kingdom Trust isn't doing meaningful business any longer; apparently its principal value lies in its interest in a building sold in Paducah. Rather than risk burning the embattled Trust's last million dollars litigating, the lawyers hope to distribute those funds *pro rata* to a class of around 350 investors—who won't be made whole but will, thanks to the settlement, get something.

As the Court held in granting preliminary approval, the proposed settlement here is thus a reasonable response to a difficult situation. And it's one that satisfies the criteria set out in Rule 23 and Sixth Circuit precedent for approval of a settlement class. *See* Order at 2–3. No developments since the preliminary-approval order have disturbed that conclusion. In fact, the settlement has won complete buy-in from the class, and the record (such as it is) indicates that the proposed agreement is likely the only financially viable path to meaningful recovery.

**A. Rule 23(e)(2) Factors**

**1. Procedural fairness.** The settlement followed years of litigation, including dispositive motions and discovery; the parties negotiated the deal for some time; and mediation helped produce it. *See* Class Counsel Declaration (DN 146) ¶¶ 18–64. No evidence brought to the Court's attention suggests fraud or collusion. *See UAW v. General Motors Corp.*, 497 F.3d 615, 628 (6th Cir. 2007) ("presum[ing] that the class representatives handled their responsibilities with the independent vigor that the adversarial process demands," absent "evidence of improper incentives").

**2. Adequacy of relief.** Although the $1 million settlement is modest compared to estimated class losses, "the primary factor driving the Settlement amount was Defendant's inability to pay a larger settlement or satisfy a judgment." Motion for Final Approval (DN 150) at 16. Had litigation continued, the Defendant's coffers would only have continued to dwindle. Because it lost its trust license, Kingdom Trust may not conduct business and make money. *See id.*; Decl. ¶¶ 55 & 63. And further litigating the case would've racked up additional fees paid using otherwise recoverable assets. Without settlement, class members or their lawyers or both would've received less compensation.

No greater recovery appears plausible had the Plaintiffs pursued The Kingdom Trust's successor entities. It's unclear which such entities exist, and whether any of Kingdom Trust's liabilities traveled with its remaining assets. *See* Motion at 16 (Although another company acquired the Trust, "Defendant's liabilities remain with Defendant."). And as a matter of law, it's unclear that the Plaintiffs could've established liability against any such entities.

Plus, settlement now helps mitigate the sort of costs that settlement always avoids: the risks and expenses entailed by further motions practice, trial, and (perhaps) appeal. Particularly here, where likely success on the merits was far from certain. This factor is "the most important" consideration in measuring a settlement's reasonableness. *Train Derailment*, 158 F.4th at 713. And questions remained here about whether The Kingdom Trust was actually liable for Jordan's misdeeds based on its "actual knowledge" or "willful blindness" of his alleged misfeasance. Motion at 18. In this case, this settlement was clearly the best response to a difficult situation in which the more investors litigated, the less they stood to recover.

**3. Equitable treatment of class members.** The settlement distributes money *pro rata* among claiming class members (114 as of the final approval hearing) based on their respective losses. Settlement Agreement at 17; Final Approval Motion at 20. Although *pro rata* distribution is not the only legitimate method of distribution, it does generally rule out concerns of improper favoritism or discrimination among similarly situated claimants. *See, e.g.*, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999).

**4. Adequate representation.** Adequacy (of both class counsel and class representatives) has been apparent since at least the beginning of the settlement process. Counsel are capable, experienced class litigators. *See* DNs 146-2 & 146-3. Daniel McNally and Daniel Brager appear to be typical investors in the Trust who've been engaged during the litigation. *See* Class Counsel Decl. ¶¶ 30–31, 46.

* * *

The Court concludes that the settlement is "fair, reasonable, and adequate." *Déjà Vu*, 925 F.3d at 894 (quoting FED. R. CIV. P. 23(e)).

**B. *Déjà Vu* Factors**

**1. Risk of fraud or collusion.** As explained above, nothing suggests fraud or collusion here. Because no party or class member has provided "evidence of improper incentives" such as conflicts of interest or undue haste in reaching settlement, *UAW*, 497 F.3d at 633, the Court has no reason to discard its "presumption that the class representatives and counsel handled their responsibilities with the independent vigor that the adversarial process demands." *Id.* at 628.

**2. Complexity, expense, and likely duration.** By the time the parties proposed to settle, they had already litigated two dispositive motions and reviewed abundant discovery. *See* Class Counsel Decl. ¶¶ 38–40, 44–48. They also appeared before a mediator—whose involvement, though not immediately decisive, proved fruitful as negotiations continued. ¶¶ 49–55. To earn relief for the class, the Plaintiffs would've needed to withstand summary judgment, certify the class, and potentially try the case—despite difficult questions about The Kingdom Trust's knowledge of Jordan's scheme, ongoing financial viability, relationships with successor entities, and more. Yet as explained, it's hardly clear that litigating the case to judgment could've yielded more relief: since this lawsuit began, time and circumstance have apparently depleted The Kingdom Trust's assets, and this $1 million settlement may well drain the dregs.

**3. Extent of discovery.** Before the possibility of settlement arose, the parties took significant discovery. They reviewed four tranches of document production and deposed the class reps, as well as a handful of Kingdom Trust officers. *See* Class Counsel Decl. ¶¶ 44–47; Motion for Fees (DN 151) at 9). Then, as a condition of settlement, the parties engaged in further, confirmatory discovery. Those additional documents and interviews gave the Plaintiffs a holistic picture of The Kingdom Trust's finances and the desirability of this proposed resolution. ¶¶ 60–64.

**4. Likelihood of success on the merits.** The Plaintiffs may or may not have won in the end given the *scienter* and other important unanswered questions presented during this long-running case. But any favorable verdict, so far as the Court can tell, would've been Pyrrhic: if The Kingdom Trust has little more than $1 million on hand today (and no insurance coverage, *see* Motion for Final Approval at 19), the costs of litigating this case to judgment may well have swallowed any chance of collection. *See* Motion for Preliminary Approval at 23 (pointing out that The Kingdom Trust apparently has no insurance, limited assets, and no viable path to future profitability).

**5. Opinions of class counsel and representatives.** The class reps and counsel (unsurprisingly) "strongly support the settlement." Class Counsel Decl. ¶ 59. *See also* McNally Decl. (DN 151-3) at 5; Brager Decl. (DN 151-4) at 4.

**6. Reaction of absent class members.** More telling, however, is the total absence of opt-outs and objections. *See* Status Report (DN 153); Declaration of Margery Craig (DN 153-1) ¶¶ 6–7. Out of 351 identified class members, nearly a third submitted claims (104 as of the motion for final approval and 114 as of the final fairness hearing). And no one has raised any concerns with the settlement. That unanimously positive reaction likewise gives good reason to approve the settlement.

**7. Public interest.** Last, the Sixth Circuit "favors settlement of meritorious class actions," *Train Derailment*, 158 F.4th at 713 (citing *Fidel v. Farley*, 534 F.3d 508, 513–14 (6th Cir. 2008); *UAW*, 497 F.3d at 632), and enforcing investor-fraud rules is of particular concern to the public. Approval of this classwide settlement serves both ends.

* * *

Under these factors, as well, the Court concludes that the settlement is "fair, reasonable, and adequate." *Déjà Vu*, 925 F.3d at 894.

### C. Awards, Fees, and Costs

The settlement provides for a $15,000 service award to each of the class representatives. The Sixth Circuit has recognized that service awards can be "efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). These are significant awards. But they do not give the Court reason to fear that the representatives sold out their fellow class members—that, "having been promised the award, the class representatives had no interest in vigorously prosecuting the interests of unnamed class members." *Dry Max*, 724 F.3d at 722 (quotation marks omitted). Instead, these awards reflect the representatives' significant work in investigating and litigating this alleged investor fraud: reviewing financial statements and discovery, preparing and sitting for depositions, and strategizing with counsel. That work, moreover, was mostly done by the time this settlement materialized. *See* Class Counsel Decl. ¶¶ 46–47, 52, 79; McNally Decl. ¶¶ 4–10, 13–14; Brager Decl. ¶¶ 4–10, 13–14.

Finally, the Plaintiffs move for attorney's fees totaling $333,333.33, as well as $18,006.87 in litigation costs and expenses. Motion for Fees at 5. Courts may award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h). Consistent with regular practice, the Court refers the motion for attorney fees to Magistrate Judge King to address in the first instance.

## ORDER

The Court grants the motion for final approval of the class action settlement (DN 150) and refers the motion for attorney's fees to Magistrate Judge King for a report and recommendation (DN 151). This is a final order.

Benjamin Beaton, District Judge
United States District Court

August 17, 2026